Max Stein, Defendant in Error, v. Schwartz=Durkin Company, Plaintiff in Error.

## Gen. No. 15,731.

EVIDENCE—*effect of number of witnesses upon question of preponderance.* The number of witnesses testifying to a certain fact or state of

facts is a factor not to be lightly regarded in the effort to arrive at a correct conclusion, but such factor is not conclusive.

Error to the Municipal Court of Chicago; the Hon. Max Eber-hardt, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed October 4, 1911.

Moses, Rosenthal & Kennedy, for plaintiff in error; Walter Bachrach, of counsel.

D'Ancona & Pflaum, for defendant in error.

Mr. Presiding Justice Baume delivered the opinion of the court.

This writ of error is prosecuted to reverse a judgment entered in the Municipal Court in a case of the fourth class, upon a verdict against plaintiff in error for $154.69. The statement of claim filed by defendant in error, and upon which a recovery was sought, is for wages as a salesman for two weeks commencing June 29, 1908, at $30 per week under the terms of a verbal agreement, also for 3% commission, under the terms of a like agreement, on all sales made from April 15, 1908, to July 8, 1908, and on all goods sold by plaintiff in error from April 15, 1908, to December 1, 1908, to customers furnished by defendant in error to plaintiff in error while defendant in error was employed by plaintiff in error, the total amount of said sales being estimated at about $5,000, the total amount claimed for wages and commissions being $210.

Plaintiff in error seeks a reversal of the judgment mainly upon the ground that the verdict is against the clear preponderance of the evidence, the same being predicated solely upon the testimony of defendant in error, who it is claimed is positively contradicted by two unimpeached witnesses, without the presence of any elements of probability to turn the scale in favor of defendant in error.

Defendant in error testified that on April 15, 1908, he had a conversation with Simon Schwartz, the president of plaintiff in error, and proposed to accept $30 per week salary, which was to be paid weekly to his wife, and his traveling expenses, not to exceed $50 a week, and 3% commission on all goods sold and delivered; that Schwartz said to him, "All right, you can start in next Monday;" that the term of his employment was until December 1, 1908; that the regular season for the sale of ladies' cloaks, suits and skirts did not begin until June 1st, but he made a trip in May, when he was on the road one week; that he was out in the territory assigned to him during all of June and the first week of July; that upon his return on the 6th or 7th of July, Schwartz complained because his traveling expenses for one week were $15 in excess of the $50 agreed upon; that he had borrowed the $15 from one Zukerman, whom Schwartz had repaid; that he had some words with Schwartz and demanded his wages for the week commencing June 28th, which Schwartz did not pay; that he requested Schwartz to furnish him with a statement of the account between them as the same appeared upon the books of plaintiff in error, which statement was made out by the bookkeeper of plaintiff in error under date of July 8, 1908; that upon that day he was discharged by Schwartz. The statement referred to was offered in evidence by defendant in error, and it appears therefrom that the total amount of sales made by defendant in error was $3656.43; that defendant in error was therein charged as follows:

On Drawing Account:

Currency ..........................$300.00
Check sent to Zukerman.............  15.00
Merchandise .......................  17.34

On Traveling Account:

Expressage .......................... 1.25
Traveling expense less $2 returned... 298.00

Total ..............................$631.59
The statement then credits defendant
    in error with.....................$365.65.
    being 10% commission on sales
    amounting to $3656.43, and states
    the amount overdrawn and due
    plaintiff in error to be.............$265.94

                   $631.59

Edith Simmons, employed by plaintiff in error as bookkeeper, testified that she was present during a conversation in April, 1908, between defendant in error and Schwartz; that they came into the office for the purpose of going over the arrangement between them so that she would know how much defendant in error was to receive; that defendant in error said he was to receive $30 a week drawing account for his home and $50 a week for traveling expenses, and would "guarantee" that his sales would not cost over ten per cent; that defendant in error estimated, and so stated, that his traveling and drawing account would amount to seven or seven and one-half per cent. of his sales and the 3% commission on sales of goods after shipment would make the total about 10%. On cross examination the witness stated she would not testify that defendant in error used the word "guarantee," but she thought that was what he said.

Simon Schwartz testified to substantially the same facts as did the witness Edith Simmons, and further that nothing was said by himself or defendant in error about paying any salary. Defendant in error when called as a witness in rebuttal denied that he had guaranteed that the total cost of the sales made by him

should not exceed 10% of the amount of such sales, and further testified that no guarantee was asked or given, although there may have been a casual remark relating to that subject during the time the negotiations for his services were pending.

The record discloses that notwithstanding defendant in error made but one trip through any portion of the territory assigned to him prior to June 1st, the regular weekly payment of $30 was made by plaintiff in error to defendant in error or to his wife, by his direction, up to June 21, 1908, and that during all that time plaintiff in error made no objection or protest to the payment by it of money which defendant in error was not earning as commissions on sales. The only complaint made by plaintiff in error related to the one instance in which the traveling expenses of defendant in error had been $15 in excess of the weekly allowance of $50 for that purpose.

It is somewhat of a strain upon our credulity to believe that plaintiff in error paid $30 a week for ten weeks upon a mere contingent liability to pay defendant in error ten per cent. commission upon the net amount of sales made by him, and this during a considerable period before the season had opened and when it was not expected that defendant in error would be calling upon customers and selling goods.

Doubtless something was said during the negotiations preceding the actual hiring of defendant in error with reference to the relative cost of selling goods, and defendant in error may have casually boasted of his ability to limit such cost to ten per cent. of the net amount realized for the goods sold, or expressed his opinion that the expense of selling goods would not exceed ten per cent. of the net amount realized from his sales, but we are not fully persuaded that a stipulation or guaranty, such as is claimed by plaintiff in

error, was actually incorporated in the contract of hiring.

The number of witnesses testifying to a certain fact or state of facts is a factor not to be lightly regarded in the effort to arrive at a correct conclusion, but such factor is not conclusive. "Testimony is to be weighed, not counted." C. B. & Q. Ry. Co. v. Presbrey, 98 Ill. App. 303. We are at a disadvantage in determining the credibility of the witnesses as compared with the jury and trial court, who saw the witnesses and observed their demeanor while testifying. We cannot say in this case that the finding of the jury approved by the trial judge was palpably wrong.

The verdict was arrived at by allowing defendant in error a commission of 3% on the amount realized for the goods sold by him and delivered together with his salary for two weeks, and deducting therefrom the sum of $15 overdrawn on traveling expense account. It is not claimed that the verdict is not consistent with the claim and theory of defendant in error.

It is finally urged on behalf of plaintiff in error that the statement of account furnished by it to defendant in error, at his request, constituted an account stated which defendant in error is estopped to controvert. Defendant in error did not acquiesce in the correctness of the account as stated, save as to the net amount realized by plaintiff in error for goods sold by defendant in error and delivered. Whether or not the goods sold by defendant in error had been delivered, and whether or not the purchasers had taken advantage of the usual trade discount, were facts peculiarly within the knowledge of the plaintiff in error, and it is evident that defendant in error requested the statement for information in that regard. The other claims of plaintiff in error as embodied in the statement were at the time it was furnished in violent and angry dispute.

The doctrine of account stated is not applicable to the facts of the case.

For the reasons stated the judgment is affirmed.

*Judgment affirmed.*